# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| TIMOTHY PATRICK WHITE | CIVIL ACTION NO. 05-0645-M |
| VS. | SECTION P |
| OUACHITA CORRECTIONAL CENTER | JUDGE JAMES |
| | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Before the court is the civil rights complaint (42 U.S.C. §1983) of Timothy Patrick White, filed *pro se* and *in forma pauperis* on April 11, 2005. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. When he filed this complaint he was incarcerated at the Ouachita Correctional Center (OCC) in Monroe, Louisiana, and he complained of conditions of confinement at that institution. On or about April 29, 2005, plaintiff advised the court of his transfer to the Caldwell Correctional Center (CCC) in Grayson, Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

Plaintiff entered OCC on September 10, 2004. On that date he advised the booking officer that he is a Muslim and requested a non-pork diet. On September 16, 2004 plaintiff spoke to the OCC Chaplain and advised him of his religious and dietary preferences.

On February 16, 2005 plaintiff filed an Administrative Remedies Procedure Grievance (ARP) complaining that he was not being served a "non-pork" diet despite his earlier requests

which resulted in him missing an unspecified number of meals when pork was served. He also complained that he was unable to exercise his religion and demanded that he be provided with "the proper way to exercise my religion..." or that he be transferred.

The First Step Responder advised plaintiff, "You can practice any religion you wish. We are not keeping [you] from that. And anyone in your dorm can join you. It is not our fault that outside ministers do not come here any more..."

Plaintiff rejected this response and appealed. On February 22, 2005, the Second Step Responder advised plaintiff that he had been placed on a non-pork diet as of that day. Otherwise, plaintiff was advised, "As far as practicing your religion, feel free to do so. As far as Christian services you do not have to listen to them. The Islam clergy refuse to come and hold services."

Plaintiff rejected this response and on February 25, 2005, the Third Step Responder advised, "...The Muslim ministers will not come to this facility to minister. Therefore, I suggest that you practice your religion your self."

Plaintiff rejected this response. On February 28, 2004, the Fourth Step Responder (the Warden's designee) advised, "...we have provided everything that we are responsible for... The Islam clergy around here stated the inmates here were only interested in visiting and not the Islam faith."

On March 25, 2005 plaintiff filed another ARP; plaintiff complained that he had "...written several letters ... to ranking officials here at OCC in reference to transfer to a DOC facility; however, I have not even received the courtesy of a simple response since my entry to the Ouachita Correctional Center I have found the ARP Process is very ineffective, seems to have no merit and is in most cases totally ignored by the designated personnel..." Plaintiff also claimed

"As a ward of the State of Louisiana's Department of Corrections I have certain rights that I'm not allowed to exercise here, such as the right to the law lib[rary], right to further my education and right to practice your religion or attend a trade school." [See Doc. 1, Exhibits, ARP, 3/25/05]

On the same date, plaintiff's ARP was answered by an OCC Shift Supervisor. Plaintiff rejected the First Step Response and submitted his ARP to the Second Step Responder. On March 29, 2005, the Second Step Responder advised plaintiff, "We do answer our ARPs. As far as your practicing your religion go right ahead. We do not have job training..."

Plaintiff rejected this response stating, "I filed a [sic] ARP Second Request for qualify religion right ... and haven't gotten a [sic] answer from that one as well." The Third Step Response, written on March 30, 2005, advised plaintiff, "...as to religion we offer services for all each Sunday. If you are Muslim then we can find no person willing to come here and minister to you. If you are a true believer you can pray any where you are." Plaintiff rejected this response and noted, "...How am I denied of transfer when other inmate here is getting put on the transfer list every day when I been here longer and I still haven't receive my ARP fourth step complaint, second request for qualify religion right." On April 1, 2005, the Fourth Step Responder (the Warden) advised plaintiff that all of the supervisors' answers were proper.

Notwithstanding the documentary evidence provided by plaintiff, he contends that the grievance process is inadequate and that he has been denied the right to practice his religion and to further his education. He claims that he did not receive a non-pork diet as he requested during the period between his arrival at OCC on September 16, 2004 through February 25, 2005.

## LAW AND ANALYSIS

### 1. Frivolity Review

When a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous on the complaint alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint and the copies of his ARP Grievances specifically detail his theories of liability with respect to each named defendant. The thoroughness of the complaint convinces the court that plaintiff has pled his best case and need not be afforded any further opportunity to amend.

Accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint.

## 2. Grievances

Plaintiff's claim that the OCC administration has failed to respond to his grievances is belied by the documentary evidence he has provided. In any event, even had all of plaintiff's grievances been ignored, he would still not be able to state a claim for relief.

The narrowing of prisoner due process protection announced in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), leaves prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate the constitution and is thus not actionable under Section 1983. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"). See also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d

1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substance right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Plaintiff's claim that the OCC administration ignored his grievances is frivolous.

### 3. Practice of Religion

Inmates, such as the plaintiff, clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Of course, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including institutional security. See *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349.

The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry:

(1) Is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward by prison officials to justify the regulation?

(2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level?

(3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally?

(4) Are alternatives to the prison regulation available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000) (internal quotations and citations omitted); see also *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff's complaint is clearly controlled by the Supreme Court's decision in *O'Lone v. Estate of Shabazz, supra*. In that case, the inmate-plaintiffs complained that they were not allowed to attend the weekly Muslim congregational service held on Friday evenings because of their assignments to work details outside the main prison grounds. *O'Lone v. Estate of Shabazz*, 482 U.S. at 345-46. The Supreme Court considered the evidence supplied by the prison administration regarding security needs, rehabilitative needs, and the impact of alternative accommodations; this evidence was evaluated in the light of those rights actually retained by the inmates to practice their religion. The Court then noted that the plaintiff- inmates were not deprived of <u>all</u> forms of religious exercise. Based upon these facts, the Supreme Court held that the "ability on the part of [the inmates] to participate in other religious observances of their faith

supports the conclusion that the restrictions at issue here were reasonable." *Id.* at 352.

Like the plaintiffs in *O'Lone v. Estate of Shabazz*, this plaintiff <u>has not, nor can he show that he has been deprived of all means of religious expression.</u> Plaintiff does not contend that his right to worship has in any way been curtailed by the OCC Administration; instead, he only faults the Administration for not providing scheduled religious services conducted by Islamic clergy.

In short, plaintiff has failed to demonstrate that his First Amendment free-exercise right has been violated. See *Mumin v. Phelps*, 857 F.2d 1055, 1056 (5th Cir.1988) (holding that even a prison regulation which <u>prohibited</u> Muslim inmates from attending Friday services was not unconstitutionally restrictive because it satisfied all four "reasonableness" considerations).

"[T]he loss of [plaintiff's] absolute freedom of religious expression is but one sacrifice required by [his] incarceration...." *Scott v. Mississippi Dep't of Corrections*, 961 F.2d at 82. See *Abdur-Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 492 (6th Cir.1995) ("Reasonable time, place, or manner restrictions upon communal religious gatherings do not necessitate the identification of a compelling state interest.") Accordingly, the court concludes that plaintiff's complaint is frivolous.

Finally, to the extent that this complaint may be liberally construed to raise an equal protection complaint, plaintiff has again failed to state a claim upon which relief may be granted. To state an equal protection claim under § 1983, a plaintiff must show that "the governmental action in question classif[ies] or distinguish[es] between two or more relevant persons or groups[,] ... or ... impermissibly interferes with a fundamental right." *Edwards v. Johnson*, 209 F.3d 772, 780 (5th Cir.2000) (internal quotations and citations omitted). The plaintiff must

specifically demonstrate that the prison officials acted with a discriminatory purpose. *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir.1995). "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Id.*; *Edwards v. Johnson*, 209 F.3d at 780.

While plaintiff and his coreligionists may be an identifiable group within the prison, he has failed to show that the policy or practice complained of was enacted with any discriminatory purpose. See *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir.1992) (finding no constitutional violation where plaintiffs were "given the same reasonable opportunity to practice their faith as that provided other religious groups"). Because Plaintiff has failed to demonstrate a violation of his individual constitutional rights or a violation of the rights of all Muslim inmates housed in OCC to practice their religion, his equal protection claim (to the extent that such a claim has been asserted) has no merit.

### 4. Non-jural Defendants

Plaintiff named the OCC as one of his defendants. "It is well settled that a Sheriff's Department is not a legal entity capable of being sued." *Causey v. Parish of Tangipahoa*, 167 F.Supp.2d 898, 904 (E.D.La. 2001) quoting *Valentine v. Bonnevile Ins. Co.*, 691 So.2d 665, 668 (La. 1997). The law of Louisiana affords no legal status to the "Parish Sheriff's Department" so that the department can sue or be sued. *Garner v. Avoyelles Parish Sheriff's Dept.*, 511 So.2d 8 (La.App. 3 Cir.1987); *Ferguson v. Stephens*, 623 So.2d 711 (La.App. 4 Cir.1993).

A governmental department cannot engage in litigation "unless the true political entity has taken explicit steps to grant the servient agency with jural authority." *Darby v. Pasadena*

*Police Dep't*, 939 F.2d 311, 313-14 (5th Cir.1991). Governmental offices and departments do not have a separate legal existence. See *Ruggiero v. Litchfield*, 700 F.Supp. 863, 865 (M.D.La.1988) (local sheriff's office is not legal entity subject to suit).

Therefore, to the extent that plaintiff named the OCC as a defendant, all claims asserted against that entity lack an arguable basis in fact and law and should be dismissed as frivolous.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana, this 20th day of July, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE